**FILED**

IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ DEC 29 2005 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BAY SHORE UNION FREE SCHOOL DISTRICT, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| T., on behalf of his son, R., | ) ) |
| Defendants. | ) ) ) |

No. 05-CV-1312 (JBW)

MEMORANDUM, ORDER AND
JUDGMENT

APPEARANCES:

For Plaintiff Bay Shore Union Free School District:

> Ingerman Smith, LLP
> 167 Main Street
> Northport, NY 11768
> By: Christopher F. Venator

For Defendant T.:

> Bee Ready Fishbein Hatter & Donovan LLP
> 170 Old Country Road
> Mineola, NY 11501
> By: Joshua M. Jemal
>     Kenneth A. Gray



1

# TABLE OF CONTENTS

I.      Introduction.................................................................................................... 2
II.     Facts............................................................................................................... 3
        A.      Administrative Framework............................................................... 3
        B.      History of Action............................................................................. 6
III.    Law and Application of Law to Facts............................................................ 8
        A.      Jurisdiction...................................................................................... 8
        B.      Standard of Review......................................................................... 10
        C.      IDEA............................................................................................... 11
                1.      *Schaffer v. Weast*...............................................................11
                2.      Constitutionality of Providing Services at Parochial School............ 13
                3.      Substantive Provisions of IDEA......................................... 14
        D.      New York Education Law................................................................ 19
                1.      Substantive Provisions....................................................... 19
                2.      Procedural Provisions......................................................... 29
                3.      Administrative Application.................................................. 30
                4.      Applicability of Section 3602-c to One-to-One Aide...................... 32
                5.      Practice in Other States...................................................... 33
IV.     Conclusion..................................................................................................... 34

JACK B. WEINSTEIN, Senior District Judge:

## I.      Introduction

Plaintiff Bay Shore Union Free School District ("the school district" or "Bay Shore")
brings this action under the federal Individuals with Disabilities Education Act ("IDEA") seeking
review of a New York State administrative decision holding that the school district is obligated
to provide defendant R. with special education services at his private school. The State Review
Officer determined that, while federal law did not confer upon R. an individual entitlement to
services at his private school, New York State law did. The Review Officer's decision is
affirmed dubitante.

The court is hampered in its analysis by a confluence of unclear statutory and regulatory
language, a dearth of precedent and meager analysis by the administrative personnel. State law is

intended to piggyback on federal law, but the two sets of law vary in ways that may be significant. In dealing with issues somewhat analogous to those now present, the New York Court of Appeals, when construing one of the provisions now at issue, precluded only the parties' most extreme positions; it did not clearly define what a school board was obligated to do. It is difficult in the instant case to disentangle the administrative officers' findings of fact (which are owed a significant, though poorly defined, degree of deference) from their interpretations of law (which are owed no deference). The officers rely on a federally created concept—free appropriate public education—but ascribe state law contours.

In this important area of the law, courts and administrative agencies require guidance. An appeal to the Court of Appeals for the Second Circuit and certification to the New York Court of Appeals may be useful. The matter is of grave importance to the parties. It is likely to arise again and again.

## II.    Facts

### A.    Administrative Framework

New York State has an extensive and complicated review process for determining which children have disabilities and what special education services they are entitled to receive. The process implicates both New York Education Law and federal IDEA.

To receive federal funding for special education under IDEA, a state must meet specified minimum substantive and procedural requirements for special education services to children. *See* 20 U.S.C. §§ 1400 *et seq.* States must provide each disabled child with a free appropriate public education, devise an individual education program ("IEP") to meet the student's needs,

3

evaluate the case in accordance with procedures set out in the federal statute, guarantee the child and his parents access to state administrative review of any decisions about the provision of special education services, provide for judicial review, and establish agencies necessary to effectuate these requirements. *See* 20 U.S.C. § 1412. States may offer services above that required by IDEA: the federal statute provides a floor, not a ceiling. *Cf.* 20 U.S.C. § 1407(a)(2) (state shall notify local educational agencies of any "rule, regulation, or policy as a state-imposed requirement that is not required by" IDEA). Students (through their parents) or school districts aggrieved by an action of a state receiving funding under IDEA have a private right of action; they may file suit in either state or federal court. 20 U.S.C. § 1415(i)(2)(A).

New York State receives funding under IDEA. The New York Education Law, Chapter 16 of the New York Consolidated Laws, governs the provision of educational services. Sections 4401 *et seq.* of the Education Law provide for special education for children with handicapping conditions and set out the substantive and procedural duties of school districts and state agencies. The New York Education Law and its enforcing regulations have repeatedly been amended to keep pace with changes to IDEA—most recently, in September 2005. *See generally*, 8 N.Y.C.R.R. §§ 200 *et seq.*

Under the Education Law, each school district must establish a Committee on Special Education ("Committee") to evaluate and place children with disabilities. N.Y. Educ. Law § 4402(1)(b). Any parent or teacher of a student who is suspected of having a disability may refer the student to the Committee, N.Y. Educ. Law § 4401-a(1), which must order appropriate examinations. N.Y. Educ. Law § 4402(3). The Committee, upon review of all test results and teacher reports, recommends any required special educational programs for the student in the

4

form of an IEP. *Id.*; 8 N.Y.C.R.R. § 200.4.

If the parents disagree with the Committee's decision the district must offer them access to a mediation process. 8 N.Y.C.R.R. § 200.5(h). Should mediation fail, the parents may request a hearing before an Impartial Hearing Officer trained and approved by the New York State Board of Education. N.Y. Educ. Law § 4404(1). The parties may brief any issues of law; the Officer must conduct a hearing on the record during which the parties—school district and student, through a parent—may be represented by counsel, submit evidence and cross-examine witnesses. 8 N.Y.C.R.R. § 200.5(i).

Either party may appeal the determination of the Impartial Hearing Officer to a State Review Officer. N.Y. Educ. Law § 4404(2). The Review Officer evaluates the record of the impartial hearing and issues a written decision. 8 N.Y.C.R.R. § 200.5(j). Aside from the right to appeal to a state or federal court guaranteed by IDEA, New York state law provides that a student (represented by a parent) who disagrees with the decision of the State Review Officer may file a complaint with the State Educational Department, 8 N.Y.C.R.R. § 200.5(k). He may also file suit in State Supreme Court under Article 4 (as a special proceeding) or Article 78 (as a review of a state officer's action) of the New York Civil Practice Law and Rules. 8 N.Y.C.R.R. § 200.5(j)(3); N.Y. Educ. Law § 4404(3). A school district may file a complaint in state court, but may not seek state review under section 200.5(k) of the Regulations of the Commissioner of Education. As already noted, IDEA also grants review jurisdiction to federal district courts. 20 U.S.C. § 1415(i)(3)(A).

5

**B.      History of Action**

R., an infant, is an elementary student at a parochial school within the boundaries of the Bay Shore school district. In the fall of 2003, R.'s teacher noticed that R. had difficulty concentrating and following instructions. In November 2003, R.'s teacher referred him to the school district's Committee for a battery of tests. The examinations revealed that R. had high average intellectual ability and no learning disability. A psychiatric evaluation conducted in January 2004 resulted in a diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD"). The Committee convened several times that spring and ordered additional tests. It met again in June 2004 and, upon a review of the examination results and teacher reports, determined that R. qualified as "other health impaired" under section 200.1(zz)(10) of the New York State Commissioner of Education's Regulations—because of his ADHD.

The Committee drew up an IEP for R. It recommended 40 minutes a day in a resource room, where he could receive help with organizational skills and learn to compensate for his difficulties focusing, and a one-to-one aide for three hours a day during his academic classes. The Committee recommended that the one-to-one aide be provided only if R. attends a public school within the district.

R.'s parents agreed with the Committee's determination of R.'s disability and agreed that he should attend the resource room at a public school, but asserted that he was entitled to a one-to-one aide at the private school he was attending. Despite efforts at mediation, the two sides were unable to reach an agreement. In July 2004, R.'s parents requested an impartial hearing.

A hearing was held in August 2004. The Impartial Hearing Officer found that the school district was obligated to provide R. with a one-to-one aide at his private school. The officer held

6

that to force him to transfer or travel to the public school or forego the one-to-one aide would unduly disrupt his education and deny him the free appropriate public education guaranteed him by IDEA and the state Education Law. IHO Decis. 9.

The school district appealed the decision. In November 2004, a State Review Officer affirmed in part the findings of the Impartial Hearing Officer. The Review Officer ruled that, although the school district had no obligation under IDEA to provide R. with a one-to-one aide at the private school, the New York Education Law "confer[red] an individual entitlement to special education services and programs to eligible students enrolled by their parents in nonpublic schools." SRO Decis. 4. *See* N.Y. Educ. Law § 3602-c(2) ("Boards of education of all school districts of the state shall furnish services to pupils who are residents of this state and who attend nonpublic schools located in such school districts, upon the written request of the parent . . . .").

The school district argued before the State Review Officer that the Education Law expressly limits the obligation of a school district to provide special educational services to students, including private school students, who travel to the public school to receive those services. *See* N.Y. Educ. Law. § 3602-c(9) ("Pupils enrolled in nonpublic schools for whom services are provided pursuant to the provisions of this section shall receive such services in regular classes of the public school and shall not be provided such services separately from pupils regularly attending the public schools."). Citing a decision of the New York Court of Appeals, the State Review Officer stated that the overarching aim of the Education Law's special education provisions trumped this restrictive language. *See Board of Educ. v. Wieder*, 72 N.Y. 2d 174, 186, 527 N.E.2d 767, 773 (1998) ("[T]he paramount principle that guides State law is

concern for a handicapped child's educational needs, whether in public or private school.").

Since the one-to-one aide would not be effective unless she were present during R.'s academic

classes, the officer ruled that "the service [was] not severable from the student's participation in

the classroom," SRO Decis. 5. He ordered the school district to provide R. with a one-to-one

aide "at the nonpublic school that he is currently attending for the 2004-05 school year." SRO

Decis. 6 (citations omitted). The Officer rejected the school district's contention that a one-to-

one aide is not an instructional service as defined under the Education Law. *See* N.Y. Educ. Law

§ 3602-c(1)(a).

The school district filed suit in this court on March 10, 2005. Argument was heard on

November 16, 2005 on the state record.


## III. Law and Application of Law to Facts

## A. Jurisdiction

IDEA provides for concurrent state and federal jurisdiction over claims arising under its

provisions. *See* 20 U.S.C. § 1415(i)(2)(A). In a state receiving funding under IDEA, a party

aggrieved by the decision of a State Review Officer made pursuant to IDEA's administrative

procedures may bring an action in federal district court without regard to the amount in

controversy. 20 U.S.C. § 1415(i)(2)(A); *see also* 20 U.S.C. § 1415(i)(3)(A) ("The district courts

of the United States shall have jurisdiction of actions brought under this section without regard to

the amount in controversy."). In such an action, the court "(i) shall receive the records of the

administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii)

basing its decision on the preponderance of the evidence, shall grant such relief as the court

determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

District courts have original jurisdiction over claims arising under federal law.  28 U.S.C. § 1331.  Jurisdiction over supplemental state law claims is appropriate if those claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Multiple claims based on the same "common nucleus of operative fact" form part of the same case or controversy. *Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138 (1966); *see also*, *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 169, 118 S. Ct. 523, 531 (1997) (federal district court could exercise supplemental jurisdiction over factually related state law claims providing for judicial review of administrative decisions).

Displeased by the decision of the state review officer, the school district brought suit in this court under section 1415(i)(2) of Title 20 of the United States Code.  The state law claims arise from a common nucleus of operative fact—the development of R.'s IEP and the administrative decisions—permitting the exercise of supplemental jurisdiction.

Both parties agree that IDEA itself does not entitle R. to services at his private school, making permissible dismissal without prejudice of the state law claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").  Dismissal is permissive, not mandatory—"district courts *may* decline to exercise supplemental jurisdiction . . . ." *Id.* (emphasis supplied).

Though it may set higher standards, the New York state law is intertwined with the federal statute.  It was developed at least in part in reliance upon it.  Given the strong interest

evinced by Congress in the provision of a free appropriate public education to disabled students in states receiving federal aid, continued jurisdiction over the related state law claims is appropriate.

## B.    Standard of Review

Judicial review of administrative proceedings under IDEA's due process provisions is deferential. "[A] court's inquiry in suits brought under [IDEA] is twofold. First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" *Board of Educ. v. Rowley*, 458 U.S. 176, 206-7, 102 S. Ct. 3034, 3051 (1982). When making these determinations, "courts must be careful to avoid imposing their view of preferable educational methods upon the States." *Id.* at 207.

District courts are to give "due weight" to state administrative factual decisions with regards to the appropriateness of special education services provided under IDEA, "mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Walczak v. Florida Union Free School Dist.*, 142 F.3d 119, 129 (2d Cir. 1998) (quoting *Rowley*); *see also, D.F. ex rel. N.F. v. Ramapo Central School District*, No. 04-6170-cv(L), — F.3d —, 2005 WL 3118420, at *2 (2d Cir. Nov. 23, 2005) ("IDEA . . . strictly limit[s] judicial review of state administrative decisions.").

By contrast, no deference is due to state administrative interpretations of law. "[T]he due weight we ordinarily must give to the state administrative proceedings is not implicated with respect to . . . issues of law." *Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.*, 397

10

F.3d 77, 82 (2d Cir. 2005) (alterations and internal quotations omitted) (quoting *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997)). "State hearing officers are not more experienced or expert than courts in interpreting" statutes; "therefore, deference is not warranted." *Id. See also, Board of Educ. v. Tom F.*, No. 01-CV-6845 (GBD), 2005 WL 22866, at *2 (S.D.N.Y. Jan. 4, 2005) ("[W]here the issue facing the court is one of statutory interpretation, the district court may review the matter de novo." (citing *Muller v. Comm. on Spec. Educ.*, 145 F.3d 95, 103 (2d Cir. 1998)).

Bay Shore's contention that state law never compels school districts to provide special education services at private schools is a matter of statutory interpretation to be reviewed by federal courts de novo. The State Review Officer's finding that forcing R. to travel to a public school to receive the services of a one-to-one aide would unreasonably disrupt his education and was not reasonably calculated to provide him with a free appropriate public education is reviewed deferentially.

## C.    IDEA

### 1.    *Schaffer v. Weast*

The Supreme Court of the United States recently clarified that "[t]he burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." *Schaffer ex rel Schaffer v. Weast*, — U.S. —, 126 S. Ct. 528, 537 (2005). This decision works a profound change in the procedure, if not the substance, of administrative hearings under IDEA in New York.

Although parents initiate the independent hearing process, the practice to date has been for school district boards of education to bear the burden of proof in hearings before independent hearing officers. *See, e.g.*, SRO Appeal No. 92-7 ("It is well established that a board of education bears the burden of establishing the appropriateness of its recommended program or placement." (citations omitted)); SRO Appeal No. 99-2 (board of education bore burden of proof when parents challenged IEP); SRO Appeal No. 02-24 (same). (State Review Officer decisions are available online at the website of the New York Office of State Review, http://www.sro.nysed.gov). In the present matter, the school district assumed the burden of proof before the Independent Hearing Officer. *See* R., Ex. D, 7.

The new rule of law announced by the Court in *Schaffer* would apply to this litigation, which was pending at the time *Schaffer* was announced. *See, e.g.*, *Bradley v. Richmond School Bd.*, 416 U.S. 696, 711, 94 S. Ct. 2006, 2016 (1974) ("[A] court is to apply the law in effect at the time it renders its decision . . ."); *Solem v. Stumes*, 465 U.S. 638, 642, 104 S. Ct. 1338, 1341 (1984) ("As a rule, judicial decisions apply retroactively." (internal quotation omitted)).

Nevertheless, Bay Shore, through counsel, has expressed doubt that *Schaffer* would affect the case. *See* T. of Nov. 16, 2005 5:6-8 ("[I]n this particular case, I don't think the burden of proof issue in the administrative proceedings would have had any bearing on the outcome."). Throughout the administrative proceedings, the school district has contended that the issues in this suit are legal, not factual. *See* T. of Ind. Hear. 5:22-6:4 ("The issue in this case is fairly simple and straightforward and for the most part is a legal issue as opposed to a more typical scenario where you have factual issues. I don't believe there are any significant factual issues."); SRO Decis. 4 ("On appeal petitioner asserts that there is no obligation under either federal or

state law for petitioner to provide the services of a 'one-on-one' aide to a student attending a private school."). Bay Shore has maintained that position in this court, agreeing that R. is entitled to the services recommended in his IEP and disputing only its obligation to provide these services at a private school chosen by R.'s parents. *See* Pl.'s Br. 14 ("The District is not suggesting that R[.] does not need a one-on-one aide—he clearly does. The District's position is that . . . there is no authority under either Federal or State law that requires the District to provide R[.] with a one-on-one aide at [his private school].").

At oral argument, the school district waived the right to whatever advantage it might have gained under *Schaffer*. It agreed to bear the burden of proof in the instant case. *See* T. of Nov. 16, 2005 5:13-17.

## 2. Constitutionality of Providing Services at Parochial School

The Establishment Clause of the First Amendment of the United States Constitution does not bar provision of governmentally funded services by public school districts at parochial schools. *See* U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion . . . ."); *see also, e.g., Zobrest v. Catalina Foothills School Dist.*, 509 U.S. 1, 113 S. Ct. 2462 (1993) (state-employed sign-language interpreter whose salary was funded by IDEA could accompany deaf child to his Roman Catholic high school); *Mitchell v. Helms*, 530 U.S. 793, 120 S. Ct. 2530 (2000) (federal funds channeled to local school district could be used to provide equipment and services at parochial schools). For the purposes of this litigation it is assumed that provision of the Bay Shore-funded services required by R.'s IEP at his parochial school does not violate the First Amendment. The parties do not contest that assumption.

13

The Constitution of the State of New York contains a general guarantee of religious liberty and a specific ban on the use of state funds to aid denominational schools. *See* N.Y. Const. art. I, § 3; art. XI, § 3. Neither appears to prohibit the provision of special educational services to a disabled student entitled to a public education on the premises of a parochial school. First, if Bay Shore were to provide R. with a one-to-one aide at his parochial school, the state would be paying a public employee for the benefit of a student; the private school would not be receiving direct or indirect aid. Second, any federal—as opposed to state—funds expended for this purpose would fall outside New York's Article XI ban on aid to denominational schools. Bay Shore does not rely upon either of these provisions as a reason to reverse the State Review Officer's decision.

### 3. Substantive Provisions of the IDEA

In order to receive federal funding under IDEA, a state must provide to all children with disabilities a free appropriate public education in the least restrictive environment possible.

> The term "free appropriate public education" means special education and related services that have been provided at public expense, under public supervision and direction, and without charge; meet the standards of the State educational agency; include an appropriate preschool, elementary school, or secondary school education in the State involved; and are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9) (subsections omitted). The principle of the "least restrictive environment," or "mainstreaming," is defined as follows:

> To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care

> facilities, are educated with children who are not disabled, and
> special classes, separate schooling, or other removal of children
> with disabilities from the regular educational environment occurs
> only when the nature or severity of the disability of a child is such
> that education in regular classes with the use of supplementary aids
> and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A).

These obligations extend to children enrolled in private schools. States must provide a

proportional amount of the federal funding they receive to "children with disabilities in the State

who are enrolled by their parents in private elementary schools and secondary schools in the

school district." 20 U.S.C. § 1412(a)(10)(A)(i).

The federal statute does not forbid states to offer special education services on-site at

private schools. These services "may be provided to . . . children on the premises of private,

including religious, schools, to the extent consistent with law." 20 U.S.C. §

1412(a)(10)(A)(i)(III). *See also Russman v. Board of Educ. of City of Watervliet*, 150 F.3d 219,

222 (2d Cir. 1998) ("[S]chool districts have discretion to determine whether to provide such

services on-site [at private schools].").

IDEA requires states to identify children enrolled in private schools who may need

special education services, 20 U.S.C. § 1412(a)(3)(A), in an equitable manner, 20 U.S.C. §

1412(a)(10)(A)(ii)(II), and to "consult with private school representatives and representatives of

parents of parentally placed private school children with disabilities during the design and

development of special education and related services for the children . . . ." 20 U.S.C. §

1412(a)(10)(A)(iii). If a state fails to afford a disabled child a free appropriate public education

in the public schools, parents may withdraw him from the public schools, place him in a private

school where he can receive the needed services, and seek reimbursement from the school district for their expenditures. 20 U.S.C. § 1412(a)(10)(C)(ii). *See also, e.g., Cerra v. Pawling Cent. School Dist.*, 427 F.3d 186, 192 (2d Cir. 2005) ("When a state receiving IDEA funding fails to give a disabled child such an education, the child's parent may remove the child to an appropriate private school and then seek retroactive tuition reimbursement from the state." (citations omitted)).

The parties suggest no federal barrier, constitutional or statutory, to the provision of special education services on-site at private schools. Yet, permission is not compulsion.

Regulations promulgated under IDEA expressly state that the Act does not entitle students in private schools to the same level of services as those in public schools. Section 300.455(a) of Title 34 of the Code of Federal Regulations reads in pertinent part:

> (2) Private school children with disabilities may receive a different amount of services than children with disabilities in public schools.
>
> (3) No private school child with a disability is entitled to any service or to any amount of a service the child would receive if enrolled in a public school.

34 C.F.R. § 300.455(a). *See also*, 34 C.F.R. § 300.454(a)(1) ("No private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school."). R. does not challenge the validity of these regulations.

These federal regulations contemplate differential provision of services between public and private school students. They are silent on the subject of on-site provision of services to children voluntarily enrolled in private schools.

16

The Court of Appeals for the Second Circuit has held that, while a school district is required to allocate a proportional amount of the federal funding it receives under IDEA to disabled students attending private schools, special educational services "need not be provided on the private school's premises." *Russman v. Bd. of Educ. of the Enlarged City Sch. of City of Watervliet*, 150 F.3d 219, 221 (2d Cir. 1998); *see also Id.* at 222 ("[W]e hold that the statute does not require a school district to provide on-site services to a disabled child who is voluntarily enrolled in private school."). Every circuit court that has considered whether IDEA requires services to be provided on-site at a private school has concluded that it does not. *See Jasa v. Millard*, 206 F.3d 813, 815 (8th Cir. 2000) ("The [plaintiffs] contend that the Millard District must now provide Sean special education services at [his private school]. This contention is foreclosed by the 1997 IDEA amendments as construed by this court . . . ."); *KDM ex rel. WJM v. Reedsport School Dist.*, 196 F.3d 1046, 1049 (9th Cir. 1999) (affirming district court's denial of relief to parents under IDEA), *cert. denied*, 531 U.S. 1010, 121 S. Ct. 564 (2000); *K.R. by M.R. v. Anderson Community School Corp.*, 125 F.3d 1017, 1019 (7th Cir. 1997) (affirming previous decision, 81 F.3d 673 (7th Cir. 1996), that IDEA did not require provision of services on-site at private school), *cert. denied*, 523 U.S. 1046, 118 S. Ct. 1360 (1998); *Cefalu v. East Baton Rouge Parish Sch. Bd.*, 117 F.3d 231, 233 (5th Cir.1997) ("We therefore hold unambiguously that the defendants were not legally obligated to provide an on-site sign language interpreter to the plaintiff at the private school."); *see also Goodall by Goodall v. Stafford County School Bd.*, 930 F.2d 363, 369 (4th Cir. 1991) (under the Education of All Handicapped Children Act, an earlier version of IDEA, school district was not required to provide deaf child with sign-language interpreter on-site at his private school). Every district court in a circuit in which the Court of

Appeals has not yet addressed the issue has adopted this conclusion. *See Bristol Warren Reg. Sch. Comm. v. Rhode Island Dept. of Educ.*, 253 F. Supp. 2d 236, 241-2 (D.R.I. 2003) (school district not required under the IDEA to provide services on-site at private school); *Gary S. v. Manchester School Dist.*, 241 F. Supp. 2d 111, 115 (D.N.H. 2003) ("[A] disabled student in private school does not have an individually enforceable right to receive special education and related services" under IDEA); *John T. ex rel. Paul T. v. Com. of Pa.*, No. CIV. A. 98-5781, 2000 WL 558582, at *3 (E.D. Pa. May 8, 2000) ("IDEA alone does not require a state to fund special educational needs in a nonpublic setting if there is a suitable public school setting available that the parents have voluntarily rejected.").

Following 1997 amendments to IDEA that limited the obligation of school districts to provide services to disabled children who had been unilaterally placed by their parents in private schools, the Supreme Court vacated a decision by the Court of Appeals for the Tenth Circuit requiring payment for on-site services at a private school. *Fowler v. Unified School Dist. No. 259*, 107 F.3d 797 (10th Cir. 1997), *cert. granted, judgment vacated*, 521 U.S. 1115, 117 S. Ct. 2503 (1997). On remand, the Tenth Circuit held for the parents on state law grounds. *Fowler v. Unified School Dist. No. 259*, 128 F.3d 1431, 1439 (10th Cir. 1997).

The parties agree that IDEA and its enforcing regulations do not require the school district to provide a one-to-one aide to R. at his private school. Defs.' Br. 9 ("[N]o . . . children are individually entitled under the IDEA to any or all of the services they would receive if enrolled in a public school."); Pl.'s Br. 6 ("[T]he District does not have an obligation under federal law to provide services to a student unilaterally enrolled by the parent in a private school."). The State Review Officer so held. *See* SRO Decis. 4 ("Although boards of education

18

are required by the IDEA to provide some special education services to some children enrolled privately by their parents in nonpublic schools, no such children are individually entitled under the IDEA to any or all of the services they would receive if enrolled in a public school."). Binding precedent from the Court of Appeals for the Second Circuit, persuasive authority from other circuits, the language of IDEA itself and that of its enforcing regulations all lead to the same conclusion: federal law does not compel the school district to provide R. a one-to-one aide at his private school. The State Review Officer's decision on this point is affirmed.

The question then is whether New York law requires Bay Shore to furnish the service at R.'s private school, an issue addressed below.

### D.    New York Education Law

### 1.    Substantive Provisions

The New York Education Law describes in detail the obligations of school districts with respect to the disabled pupils within their boundaries.

> The board of education or trustees of each school district shall be required to furnish suitable educational opportunities for children with handicapping conditions by one of the special services or programs listed in subdivision two of section forty-four hundred one. The need of the individual child shall determine which of such services shall be rendered.

N.Y. Educ. Law § 4402(2)(a). A child with a disability is defined as:

> a person under the age of twenty-one who is entitled to attend public schools pursuant to section thirty-two hundred two of this chapter [i.e., does not have a high school diploma] and who, because of mental, physical or emotional reasons can only receive appropriate educational opportunities from a program of special education.

19

N.Y. Educ. Law § 4401(1). Although the statute uses different terms in section 4402(2) ("child with a handicapping condition") and 4401(1) ("child with a disability"), they define the same class of persons—students entitled to special education services.

The Commissioner of Education's Regulations define this class in more detail. Among the many and diverse disorders covered is "other health impairment," which is defined as follows:

> having limited strength, vitality or alertness, including a heightened
> altertness to environmental stimuli, that results in limited alertness
> with respect to the educational environment, that is due to chronic
> or acute health problems, including but not limited to . . . attention
> deficit disorder or attention deficit hyperactivity disorder . . . which
> adversely affects a student's educational performance.

8 N.Y.C.R.R. § 200.1(zz)(10). It is undisputed that R. is entitled to attend public schools in the state and that he qualifies as "other health impaired" because he has been diagnosed with ADHD. The school district is thus required to furnish him with "suitable educational opportunities . . . by . . . special services or programs." N.Y. Educ. Law § 4402(2)(a).

The special services and programs that school districts must furnish, as appropriate, to eligible students, include in pertinent part:

> a. Special classes, transitional support services, resource rooms,
> direct and indirect consultant teacher services, transition services
> as defined in subdivision nine of this section, assistive technology
> devices as defined under federal law, travel training, home
> instruction, and special teachers to include itinerant teachers as
> provided by the schools of the district of residence with such terms
> and services to be defined by regulations of the commissioner. . . .
>
> k. Related services which shall in appropriate cases be furnished to
> students with disabilities shall include audiology, counseling
> including rehabilitation counseling services, occupational therapy,
> physical therapy, speech pathology, medical services as defined by

> regulations of the commissioner, psychological services, school
> health services, school social work, assistive technology services as
> defined under federal law, interpreting services, orientation and
> mobility services, parent counseling and training and other
> appropriate developmental, corrective or other support services and
> appropriate access to recreation. . . .

N.Y. Educ. Law § 4401(2). This section also addresses contracts with other districts, private

residential and day programs and boards of cooperative educational services ("BOCES"). *Id.* A

BOCES, an intermediate level in the state public education system, allows multiple (frequently

rural or suburban) school districts to pool their resources and provide services to all the students

in the affiliated districts.

The school district is required to choose the "most reasonable and appropriate" of the

services described in section 4401 for students entitled to them.

> The board shall select the most reasonable and appropriate special
> service or program for such children from those programs specified
> in [section 4401 quoted directly above] upon receipt of the
> recommendation of the committee on special education.

N.Y. Educ. Law § 4402(2)(b)(2). The school district's Committee must draw up a detailed IEP

for each qualified student. Pursuant to New York state regulations, the IEP is to include a

description of the student's present performance; disability classification; measurable goals;

recommended program and services, including class size and supplementary aids; the regular

classes in which the student will receive an aide; whether the student will participate in state and

local assessments; the extent to which the student will participate in regular education; for older

students, plans for transition to post-secondary study or training; the frequency and nature of

progress reports for the student's parents; the projected initiation date, frequency, location and

duration of services; any assistive technology devices to be used by the student; any testing

accommodations; and the recommended placement. *See* 8 N.Y.C.R.R. § 200.4(d). The

"recommended placement" includes the school to be attended. *See* Record, Ex. B (IEP for R.), 1

(indicating, under the heading "Recommended Classification and Placement Information," that

R. is to attend Fifth Avenue School, a public elementary school in the Bay Shore Union Free

School District).

Like IDEA, the New York Education Law and its enforcing regulations neither expressly

prohibit nor require school districts to provide special education services on-site at private

schools. Both the state statute and regulations frequently mention "State Education Department-

approved private schools," but these references are to intensive programs designed for children

who have great difficulty performing in a public school facility. *See* Judith A. Rizzo, Report,

Board of Education of the City of New York, Special Education Services As Part of A Unified

Service Delivery System 40 ("SED approved non-public schools provide a range of special class

services full-time for students whose educational needs require intensive educational,

rehabilitative, and/or clinical services—which cannot be provided appropriately in a public

school facility—on a continual basis."). R.'s private school is not a provider of such an approved

program.

Only one section of the state statute addresses the rights of private school students to

special education services. Section 3602-c of the New York Education Law governs

apportionment of monies by the State Department of Education to school districts providing

services to students attending private schools. Known as the Dual Enrollment Statute, it reads in

pertinent part:

> 2. Boards of education of all school districts of the state shall furnish services to pupils who are residents of this state and who attend nonpublic schools located in such school districts, upon the written request of the parent or person in parental relation of any such pupil.
>
> . . .
>
> 9. Pupils enrolled in nonpublic schools for whom services are provided pursuant to the provisions of this section shall receive such services in regular classes of the public school and shall not be provided such services separately from pupils regularly attending the public schools.

N.Y. Educ. Law § 3602-c.

Subsection 9 of the Dual Enrollment Statute is the gravamen of Bay Shore's case. It contends that, as interpreted by the District Court for the Northern District of New York, *Russman v. Board of Educ.*, 92 F. Supp. 2d 95 (N.D.N.Y. 2000), and the New York Court of Appeals, *Board of Educ. v. Wieder*, 72 N.Y.2d 174, 527 N.E.2d 767 (N.Y. 1988), this subsection imposes no obligation upon it to provide special educational services on the premises of private schools. R. counters that the district places unwarranted weight on subsection 9. He argues that, in light of the "paramount principle" enunciated by *Wieder*, viz., "concern for a handicapped child's educational needs, whether in public or private school," Def.'s Br. 10 (quoting *Wieder*, 72 N.Y.2d at 186), there are instances in which special services in a private school are required under New York law.

There is little precedent on point. Whether it is sufficiently clear to permit decision without certification to the New York Court of Appeals is a matter for the Court of Appeals for the Second Circuit, not a district court in this circuit. *See* 22 N.Y.C.R.R. § 500.27(a) (when "determinative questions of New York law are involved . . . for which no controlling precedent of the [New York] Court of Appeals exists, the court may certify the dispositive questions of law

23

to the Court of Appeals") (new rules effective September 1, 2005); *Lehman Bros. v. Schein*, 416

U.S. 386, 391, 94 S. Ct. 1741, 1744 (1974) (use of certification "rests in the sound discretion of

the federal court" and is appropriate where the law is unsettled).

In isolation, subsection 9 does seem susceptible to the district's reading. The district

court in *Russman* construed it to relieve school districts of any obligation to provide on-site

services at private schools. "[Subsection] 9 leads the Court to the conclusion that Defendant was

not required by law to provide Plaintiff with the necessary services on-site at St. Brigid's

Regional Catholic School." *Russman*, 92 F. Supp. 2d at 97. The district court's decision was

later vacated as moot. *See Russman v. Board of Educ.*, 260 F.3d 114, 121 (2d Cir. 2001) (student

withdrew from high school after receiving IEP diploma and, though entitled to, had no plans to

return). Bay Shore urges this court to follow the reasoning in *Russman*.

The district court in *Russman* relied on the decision of the New York Court of Appeals in

*Wieder* for its holding. *See Russman*, 92 F. Supp. 2d at 97. ("Since [the New York Court of

Appeals] refused to require the plaintiff Board of Education to provide the necessary services at a

neutral site, there is no reason to indicate that the court would have gone further by requiring the

provision of these services in a parochial setting."). In so doing, it may have misread the *Wieder*

decision.

*Wieder* was a class action fought from extreme positions. It pitted the board of education

of an Orange County, New York school district against the families of Satmar Orthodox Jews

living in the incorporated village of Kiryas Joel. The Satmars refused to enroll their children in

public schools, preferring to live separately from the surrounding communities. *Wieder*, 72

N.Y.2d at 179-80. They sought a ruling that "State and Federal statutes mandate provision of

24

[special education] services to nonpublic school children on the premises of the schools they normally attend . . . ." *Wieder* at 187-8. *See also id.* (describing this contention as one arguing for a "general compulsion"). The local board of education sought a declaration that the Education Law "compels, and authorizes, school districts to offer programs and services to private school handicapped students only in regular public school classes and programs, and not elsewhere." *Id.* at 184.

The New York Court of Appeals' characterization of the case bears full quotation.

> Despite past efforts at accommodation in the interests of meeting the unquestioned needs of these children, this is a litigation of "musts." Both sides ask only what the law compels or requires, not what it permits. As the pleadings are framed, plaintiff Board of Education demands judgment declaring that the law *compels* it to furnish special education and related services of an instructional, remedial and therapeutic nature *only* in regular public school classes and programs, and declaring that it is without authority to provide such services separately. At the other extreme, defendants' counterclaim demands a declaration that the Board *must* furnish these services in classes conducted on the premises of the school the children attend for their normal educational instruction.

*Id.* at 178-9 (emphasis supplied). The New York Court of Appeals concluded that "neither party's position is compelled by law." *Id.* at 179. This background—a class action affecting all students in a closed community, argued from antipodes—is important to keep in mind when considering New York's highest court's views.

The New York Court of Appeals first addressed the board of education's position that it was prohibited by the Dual Enrollment Statute from providing special education services at the Satmarer's private schools or a neutral site. It rejected the district's contention, stating that the Dual Enrollment Statute was designed to "increase benefits afforded to handicapped children in

private schools—not to limit them—by offering these students access to all of the special programs provided for public school students and by integrating them generally with public school students." *Wieder* at 184-5. While special education placements "may well be in regular public school classes and programs, in the interests of mainstreaming," *id.* at 184, "there is no suggestion that the statute was intended to introduce into the regulatory scheme a compulsion that programs be concentrated solely in the public schools . . . ." *Id.* at 185. The statute did not narrow options; it "afford[ed] an added double-enrollment option." *Id.* The function of subsection 9 was not to mandate that private school students receive all special education services at public schools. Rather, "*if* they become part-time public school students, for the purpose of receiving the special services, the statute directs that they be integrated with other public school students, not isolated from them." *Id.* at 184 (emphasis supplied).

The state Court of Appeals also rebuffed the Satmar parents' position that the school districts were required in all cases to provide special education services to private school students at their private schools. "Defendants' contention that State and Federal statutes mandate provision of services to nonpublic school children on the premises of the schools they normally attend, requires little discussion. . . . [T]here is no such statutory requirement." *Id.* at 187-8. To impose such a "general compulsion" would violate the flexible, individualized spirit of the state regulatory scheme. *Id.* The New York Court of Appeals' interpretation of New York state law is controlling. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938).

It seems apparent that New York school districts need not in every case provide services to disabled children on-site at private schools. Yet the school district argues that *Wieder* stands for a further proposition: that it is not required to provide services at private schools in *any* case.

Bay Shore misreads the decision. The position rejected by the New York Court of Appeals was not that school districts may never be required to provide special education services to private school students on-site at their private schools. Rather, it was that school districts are not in *all* cases required to provide such services at private schools. "The statute does not limit the right and responsibility of educational authorities in the first instance to make placements appropriate to the educational needs of each child, whether the child attends public or private school." *Id.* at 184.

The district's proposed reading of the statute ignores its relationship with the rest of the Education Law's special education provisions. The Education Law authorizes a wide range of services, including home instruction, itinerant teachers, counseling, psychological services, and contracts with private and out-of-state facilities, depending on the child's needs. *See* Educ. Law §§ 4401, 4407; *Wieder* at 186. As the New York Court of Appeals observed, "it is plain that not all services can even be furnished in 'regular classes of the public school.'" *Id.* (quoting New York Education Law § 3602-c(9)).

Since "not all services can even be furnished in 'regular classes of the public school,'" *id.*, some of them must be provided elsewhere. If the "educational needs" of the child require services to be provided at his private school, it seems logical to conclude that the district must provide them at that location. The determination of what the child's educational needs require is for the school district's Committee on Special Education in the first instance, and for the Independent Hearing Officer and State Review Officer on review.

> [T]he paramount principle that guides State law is concern for a handicapped child's educational needs, *whether in public or private school.* All handicapped children residing within a school

27

> district are to be afforded suitable educational opportunities
> *according to their individual needs*, in a manner that enables them
> to participate in regular education services when appropriate.

*Id.* (emphasis supplied) (citations omitted).

There is nothing in the state statutory or regulatory scheme that would suggest that, as a matter of law, handicapped students enrolled in private schools are compelled to choose between receiving needed services and attending the private school of their choice. Such a compulsion might trigger troubling constitutional issues regarding the free exercise of religion. *See, e.g., Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 107 S.Ct. 1046 (1987) (denial of unemployment benefits to religious convert who resigned position that required her to work on the Sabbath unconstitutional); *Thomas v. Review Board, Indiana Employment Security Div.*, 450 U.S. 707, 101 S. Ct. 1425 (1981) (denial of unemployment benefits to applicant whose religion forbade him to fabricate weapons unconstitutional); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526 (1972) (compulsory education law unconstitutional as applied to Old Order Amish, who objected to formal education beyond the eighth grade); *Sherbert v. Verner*, 374 U.S. 398, 83 S. Ct. 1790 (1963) (denial of unemployment benefits to applicant who refused to accept work requiring her to violate the Sabbath unconstitutional). Constitutional apprehension is to be avoided if a reasonable construction of the statute permits. "A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." *U.S. v. Jin Fuey Moy*, 241 U.S. 394, 401, 36 S. Ct. 658, 659 (1916) (Holmes, J.).

The state scheme is designed to provide a flexible framework within which school districts can design their own programs for meeting their obligations to provide handicapped

children with appropriate educations—subject to administrative review. It is to an analysis of the administrative proceedings in this case that this memorandum now turns.

**2.     Procedural Provisions**

Parents and school districts are entitled to an independent hearing on any aspect of the IEP process. "A parent or a school district may initiate a hearing on matters relating to the identification, evaluation or educational placement of a student with a disability, or the provision of a free appropriate public education to the child." 8 N.Y.C.R.R. § 200.5(i)(1). "The task of a hearing officer is to determine the appropriateness of a placement recommended by a C[ommittee on] S[pecial] E[ducation]." SRO Appeal No. 90-17. The officer's decision is binding upon both the school district and the parents unless it is appealed to a State Review Officer. 8 N.Y.C.R.R. § 200.5(i)(4)(v). The Review Officer's decision, if any, is final unless either party seeks judicial review. 8 N.Y.C.R.R. § 200.5(j)(3).

The decisions of the Hearing Officer and State Review Officer are determinations of fact: what is an appropriate education for the particular student? These are "persistent and difficult questions of educational policy," *Walczak*, 142 F.3d at 129, answered by administrative officers specifically certified by the Commissioner of Education to address them. *See* 8 N.Y.C.R.R. § 200.2(e)(1)(i) (Commissioner to vet independent hearing officers); 8 N.Y.C.R.R. § 279.1(a) (State Review Officer is employee of State Education Department designated by Commissioner).

A federal district court, which has only a cold record of the proceedings below before it and little expertise on educational matters, must give these determinations of fact "due weight." *Walczak* at 129. In effect, the administrative determination of the State Review Officer is *the*

29

definition of a disabled student's needs and the appropriate education that a school district must provide to him.

### 3. Administrative Application

In the case at bar, the hearing officer had before him documents and witnesses who explained in detail R.'s diagnosis and needs and the arrangements proposed by the school district. Upon consideration of this evidence, he determined that the school district had in the past provided services to children who attended private school if traveling between the private and public schools "would cause too much disruption in the child's school day and would take away from their academic experience." IHO Decis. 9 (internal quotation omitted). He further determined that "under the circumstances of this case, based upon the services the CSE deemed necessary for the child's appropriate education . . . *providing the aide [at the private school]* is not only a reasonable accommodation and concurrent with Board policy, *it is necessary for the boy's [free appropriate public education]*." *Id.* (emphasis supplied). The school district contests the hearing officer's description of district policy, but this court has been offered no evidence on the subject and is bound by the hearing officer's finding.

The state review officer affirmed the independent hearing officer's decision, finding that "in order to meet the child's needs, *the [one-to-one aide] must be provided to the child in the classroom while instruction is taking place.* . . . [T]he service is not severable from the student's participation in the classroom." SRO Decis. 5 (emphasis supplied). On the record before this court, a finding that the administrative officers erred on the facts is not supportable.

A determination of law de novo does not provide a basis for ignoring the State Review Officer's factual decision. Ambiguities in New York's statutory scheme should be resolved by legislative amendments to the state statute or regulations. They could clear up, as a matter of law, the extent of a school district's obligation to provide special educational services to disabled students on-site at their private schools.

Congress amended IDEA in 1997 to address confusion on this very issue. It eliminated any right under the federal statute to services on-site at private schools. *See* H.R. Rep. 105-95, at *91 (1997) (IDEA imposes obligation on states to require that school districts, "to the extent consistent with law, at State discretion, provide services on the premises of private, including parochial, schools.") (quoted in *Russman*, 150 F.3d at 222).

Given that the obligation imposed upon states by IDEA is to provide a "free appropriate *public* education," 20 U.S.C. 1412(a)(1)(A) (emphasis supplied), it may seem idiosyncratic for the State Review Officer to require the school district to provide services at a private school. Yet, the state's Dual Enrollment Statute appears to contemplate just this sort of mixed education. An individual state may choose to set more generous policies for itself than IDEA requires.

Despite the difficulties attending interpretation of the New York Education Law and enforcing regulations, New York's administrative precedent has been remarkably uniform. State Review Officers have often ruled that a school district must provide particular services to an eligible student at the private school he attends. *See, e.g.*, SRO Appeal No. 02-24 (declining to require that counseling and occupational therapy be provided at the student's private school, but finding that "the services of a 1:1 full time aide can clearly be provided only at the nonpublic school."); SRO Appeal No. 02-90 ("due to the nature of the services and the needs of the student,

31

both the direct and indirect consultant teacher services recommended for respondents' son must be provided at his nonpublic school"); *cf.* SRO Appeal No. 03-59 ("School districts are . . . not obligated to provide special educational services at the private school, unless the services are of such a nature that it would be appropriate to do so.").

The parties could not direct this court to, and it has been unable to find, any example of a New York State Review Officer's finding that, as a matter of state law or general policy, a school district was not obligated to provide services at a private school when the student's needs required services at that location. These uniform state pronouncements, touching as they do on details of educational policy within the sound discretion of a state, are entitled to deference.

### 4.    Applicability of Section 3602-c to One-to-One Aide

Bay Shore contends in the alternative that a one-to-one aide is not a "service" as defined in section 3602-c(1)(a) of the Education Law. That section defines services to include "instruction in the areas of . . . education for students with handicapping conditions, and counseling, psychological and social work services *related to* such instruction . . . ." N.Y. Educ. Law § 3602-c(1)(a) (emphasis supplied). The duties of R.'s one-to-one aide would be to sit with him during his academic classes, help him focus on the task at hand and direct his activities. T. of Nov. 16, 2005 13:13-14:8. Both administrative officers below ruled that the aide's duties were sufficiently "related to" R.'s instruction to qualify as "services" to be provided under the Education Law. The court reviews this interpretation of the statute de novo, *see* III.B., *supra*; it finds no reason to disagree. The aide's duties are almost indistinguishable from that of a teacher, especially at the elementary school level, where much of what is taught to children is the

32

discipline and focus necessary to succeed in secondary and higher education—and in life.

### 5.    Practice in Other States

New York's generous but somewhat ambiguous approach deviates from the more restrictive one in many other states. The widespread practice is to permit, but not require, school districts to provide services to students in private schools. This is unsurprising, given that most state programs are patterned explicitly on the federal statute and regulations. *See, e.g.,* Cal. Educ. Code § 56174.5(a) (stating that "[n]o private school individual[] with exceptional needs is entitled to any amount of service the child would receive if enrolled in a public school," with explicit reference to identical limiting language in 34 C.F.R. § 300.455); 22 Pa. Admin. Code § 14.102(a)(2)(xvii) (specifically incorporating 34 C.F.R. § 300.455 by reference); 19 Tex. Admin. Code 89.1096 (echoing federal regulations language that "no eligible student who has been placed by his or her parent(s) in a private school or facility has an individual right to receive some or all of the special education and related services that the student would receive if he or she were enrolled in a public school district"); 8 Va. Admin. Code 20-80-66(D)(5)(c) (same); Ariz. Admin. Code R7-2-401(A) (incorporating the federal regulations by reference); *but see Fowler,* 128 F.3d at 1438-9 (requiring school district to provide on-site services where Kansas state statute required that such services, "if provided in the public schools of the school district, shall be provided in any private, nonprofit elementary or secondary school which is located in the school district."). It should be noted that the Kansas statute at issue in *Fowler* has since been amended so that it now reads: "The site for the provision of special education services under this section for an exceptional child shall be determined by the school district in consultation with the

33

parent or guardian of the child and with officials of the private, nonprofit elementary or secondary school." Kan. St. § 72-5393 (as amended by L. 1999, ch. 116, § 40).

## IV.  Conclusion

In a case such as this one, where a child requiring special educational services is attending an appropriate private school for his core elementary education, and a requisite service can be effective only in that private school, under New York law the school district must deliver the service on the premises of the private school.

Plaintiff school district's appeal is dismissed. The decision of the State Review Officer is affirmed. Plaintiff must provide a one-to-one aide to defendant at his private school. No costs or disbursements.

SO ORDERED.

Jack B. Weinstein

Dated: December 21, 2005
         Brooklyn, New York